# EXHIBIT 1

CIVIL COURT OF THE CITY OF NEW YORK
COUNTY OF NEW YORK : HOUSING PART B

---

In the Matter of the Application of the Commissioner of the
Department of Housing Preservation and Development of
the City of New York

Petitioner

For a Judgment, pursuant to Article 7A of the Real Property
Actions and Proceedings Law, appointing a court-designated
Administrator for th premises known as 438 West 164 Street
Manhattan, NY 10032
Block:02110; Lot 0076

**Decision/Order**
Index No. 13180/12

Respondent

---

Petitioner commenced this proceeding on or about June 4, 2012, seeking the appointment of an administrator pursuant to Article 7A of the RPAPL. The petition alleged that conditions in need of repair existed in the subject building including the following: unsecured building entryway doors; defective windows throughout the building; inoperable intercom system; possible structural problems at building foundation; and no cooking gas in the apartments. Petitioner estimated the cost of repairs at $442,500.00, excluding the janitor's salary, fuel, supplies, and work to the building in areas to which the inspector had no access. Respondent appeared on the first court date on July 10, 2012, and the file reflects that respondent was granted leave to serve an answer by July 30, 2012.

The answer interposed by 440 West 164th Street HDFC, Inna Khiterer and Andreas Kroll, asserted a general denial, and five affirmative defenses including: improper service; failure to serve each member of the cooperative as owners; shareholders failed to comply with their obligations under their proprietary leases; and the petition fails to allege lack of heat, running water or electricity or of adequate sewage disposal, or any other condition which has existed for five days; and there is no authority for petitioner's request to authorize the administrator to borrow money from HPD in order to make repairs.

The subject building is a five-story, 22 unit HDFC. The City of New York transferred the building to the HDFC on December 28, 1982.

The trial in this matter began on February 12, 2013, and ended on February 6, 2014. Petitioner introduced two violation summary reports into evidence. The violation summary report[1] certified on February 20, 2013 reflects a total of 388 open violations in the subject building. That total includes 244 "Class B" violations and 93 "Class C" violations. The second violation summary report[2] certified on June 19, 2013 reflects a total of 417 open violations which include 260 "Class B" violations and 104 "Class C" violations. Mark Kulik, a Project Manager with HPD, testified that he inspected the subject building and prepared the estimate of the cost of the necessary repairs, and the 7A Intake Inspection Report[3]. The report details the scope of work and prioritizes the work as follows:

1) Restore supply of cooking gas to tenants' apartments. Gas system repair.
2) Roof repair
3) Intercom system repair
4) Repair of windows
5) Building entry & vestibule doors replacement.
6) Repair of apartments
7) Building exterior and facade repair
8) Public Hall/A.E.D. repair
9) Drainage/waste system repair
10) Domestic water system repair
11) Exterminations

Mr. Kulik described the conditions he observed that presented safety and security hazards which included: broken concrete trip hazard in front of the building; no lock on the building entrance door; broken cellar windows covered with plywood; padlocked cellar door; roof bulkhead door and fire alarm lock broken; evidence of roof leak to bulkhead door; unstable retaining wall at the front of the building; corroded and rusted fire escape in need of scraping and painting to maintain an acceptable surface if it became necessary to use the fire escape; no functioning intercom; and no cooking gas supply to the apartments.

As of June 2013, the cooperative owed $59,100.18 to HPD for miscellaneous charges including repairs, and HPD's ongoing payments to Con Edison to provide gas to the boiler and hot water heater.

Inna Khiterer, the shareholder of Apartment 32, and president of the cooperative board, testified on respondent's behalf, and described the lack of management when she became a shareholder in 2008. According to Ms. Khiterer, Con Edison disconnected the cooking gas after a pipe burst, and the cooperative has been pursuing an insurance claim in order to get the funds necessary to make the necessary repairs to the gas lines and restore gas service.

---

[1]Petitioner's Exhibit 3

[2]Petitioner's Exhibit 9

[3]Petitioner's Exhibit 4

Ms. Khiterer testified that the cooperative hired Woodcrest Managment Co. on April 1, 2012. The board also hired a part-time superintendent[4] to maintain the common areas of the building. In addition, Ms. Khiterer testified that the intercom was repaired, a new front door was installed, the basement door was replaced with a metal door, roof repair work was completed and repairs were completed in the hallway. Further, the cooperative hired Rhamco, a construction management company that works with distressed buildings to get repairs completed, to resolve the HPD violations, and the company has begun work on the windows, done repair work in the apartments, plastered and painted the common areas, and certified the correction of "Class C" violations. A company was also hired to remove the blockage in the sewer lines, and leaking boiler parts were replaced. In addition, the board hired an exterminator to provide services to the building which Ms. Khiterer, who does not reside in the building[5], believes are provided once a month.

Ms. Khiterer acknowledged that the cost of restoring gas service to the cooperative was estimated at $75,000.00. This estimate covers the cost of hiring an architect to file plans, a plumber, and a contractor to close the walls. Further, Ms. Khiterer testified that the cooperative had secured a loan, paid $20,000.00, and entered into a a payment agreement with DEP, and plans to address the tax liens by entering into a payment agreement with the Department of Finance.

On cross-examination, Ms. Khiterer admitted that the board had obtained two mortgages. The mortgage agreement[6] on the first loan for the sum of $10,000.00 from Shanghai Holdings LLC of Las Vegas which closed on July 26, 2012, included an agreement which provided that respondent agreed to appoint the lender as a real estate consultant and exclusive Agent for the revitalization of the building. The agreement also provided that its intent was to provide powers usually vested to a receiver without the costs of appointing a receiver. In addition, the Agent had the right to renovate and re-rent any vacant apartments, and after repayment of any money advanced the Agent would be entitled to 30% of the monthly rent. Further, the agreement stated that this proceeding was stayed for respondent to produce a plan and prove its ability to make the repairs, and the loan was the only available option to ensure to correction of the violations, and the safety of the residents. Using the same lender, respondent obtained a second mortgage[7] for $26,000.00 on May 13, 2013. In a rider to that mortgage, respondent agreed to the following:

No later than July 31, 2013
a. Make all necessary repairs to the boiler to ensure adequate supply of heat and hot water as required by NYC Housing Maintenance Code

---

[4]The superintendent is paid $600.00 monthly with additional compensation for work done in apartments.

[5]No board member of the cooperative resides in the building.

[6]Petitioner's Exhibit 11

[7] Petitioner's Exhibit 12

b. Remediate all "C" violations
c. Restore cooking gas to the premises

No later than September 30, 2013
d. Make all necessary repairs as per HPD's 7A "Intake conditions report dated February 21, 2013".

Ms. Khitterer conceded that respondent had not fully complied with the terms the aforementioned agreement, and admitted that she was aware that, pursuant to the terms of the agreement, failure to comply with the terms was considered a default[8].

Andre Kryczenko, an employee of Woodcrest Management Corp., testified that Woodcrest sends rent statements, collects rent, receives invoices, and pays bills for respondent. However, Woodcrest does not provide full property management services, and it was Mr. Kryczenko's understanding that Rhamco would handle the registration of the building. Further, Mr. Kryczenko testified that Woodcrest tried to assist respondent in the past, but Woodcrest should not be named as the registered managing agent with HPD.

The building superintendent, Mr. Curry, Mr. Driscol of Rhamco, and Ms. Khiterer all testified that the inability to gain access to apartments at various times hampered respondent's ability to complete repairs in the apartments.

The subject building is not currently registered with HPD, and the HPD website shows a total of 449 open violations including: 271 "Class B" violations and 121 "Class C" violations. Ms. Khiterer acknowledged that the cooperative owed approximately $41,000.00 to Con Edison, and HPD maintains payment for the maintenance of the Con Edison account which services the boiler. In addition, there is no dispute that gas service has not been restored to the building.

This proceeding was commenced by HPD pursuant to RPAPL§770 (1) which provides authority for the appointment of a 7A Administrator when there are conditions that affect the life, health or safety of the occupants which have existed for five days. With a record of more than 100 "Class C" immediately hazardous violations, which have only increased within the last year, there is no question regarding the existence of conditions which meet the aforementioned requirement. (See RPAPL §770, *Kahn v Riverside Syndicate, Inc.* 45 AD2d 515 [1st Dept., 1970]).

RPAPL §775 recognizes three defenses to a proceeding brought under Article 7-A of the RPAPL: the conditions did not exist or have been corrected; the conditions were caused by residents or guests of residents; and tenants or residents refused access to allow correction of the conditions. Respondent presented evidence of efforts that have been made to address some of the repair issues identified by HPD, notwithstanding the difficulty with access in some instances. However, the

---

[8]The agreement provided that upon default the interest rate could be increased to 16% until the default is cured.

evidence presented was inconclusive in most instances, and the access issues were not related to specific violations. Also, respondent disputed the scope of work as presented by HPD. In addition, respondent claimed that it was in the process of removing violations, although no evidence was submitted in support of this claim.

Over the course of the trial, respondent maintained that the cooperative would assume responsibility for the Con Edison account, and obtain funds to restore gas service to the apartments. Respondent was afforded more than 18 months during the pendency of this proceeding to come forward with a viable plan, and failed to do so. Therefore, it is evident that respondent is unable to provide the essential service of cooking gas, or maintain heat or hot water which HPD has facilitated, and respondent cannot be afforded any relief pursuant to RPAPL §777 (see *Maresca v 167 Bleecker, Inc.* 121 Misc 2d 846 [Civ Ct, NY County 1983].) As aptly stated by the court in *Artis v City of New* York, 133 Misc 2d 629 (Civ Ct, NY County, 1986), "Article 7-A does not allow "good intentions" as a defense. The loans secured by respondent so far have not helped to significantly reduce the outstanding repairs, the conditions on the loans may further burden the building, and respondent has admittedly failed to comply with some terms of the mortgage agreement. The last multiple dwelling registration was apparently a sham, and respondent cannot seek any delinquent rents in court.

Based on the foregoing, the court finds that petitioner has established its prima facie case and conditions exist sufficient to support the appointment of a 7A Administrator. Respondent has failed to present any defense sufficient to defeat the petition.

Settle order on notice with names of proposed administrators.

This constitutes the decision and order of this court.

All trial exhibits may be picked up in Part D, Room 524 within 30 days.


DATED: February 14, 2014

HON. CHERYL J. GONZALES

Cheryl J. Gonzales, JHC

# EXHIBIT 2

FILED: NEW YORK COUNTY CLERK 12/18/2014 09:37 PM
INDEX NO. 653885/2014

NYSCEF DOC. NO. 11 15-08276-rdd    Doc 12-1    Filed 07/21/15    Entered 07/21/15 15:32:56    Exhibit    Pg    RECEIVED NYSCEF: 12/18/2014

8 of 59

# EXHIBIT H



*[handwritten: FIA 164 HOLDINGS, LLC  IK]*

## ESCROW AGREEMENT

THIS ESCROW AGREEMENT (this "Agreement") is made and entered into as
of the _____, by and among _____ (the "Depositor), and
RIVERSIDE ABSTRACT, LLC (the "Escrow Agent") *[handwritten: and Inna Khiterer ("Depositor #2")]*  *[handwritten: IK]*

*[handwritten: IK]*

### W I T N E S S E T H :

*[handwritten: Twenty Five  IK]*  *[handwritten: 125,000  IK]*

1.    **Escrow Fund Deposit.**    Seller hereby deposits the sum of
One Hundred Thousand Dollars ($100,000.00) (hereinafter, the "Escrow Fund") with
Escrow Agent, who does hereby acknowledge receipt of the Escrow Fund and does
hereby agree to deposit the same in a non-interest bearing escrow account. Escrow Agent
shall hold and disburse the same in accordance with this Agreement.

2.    **Escrow Terms and Documents.**

Referenced in Exhibit A attached *[handwritten: — and made a part of  IK]*
*[handwritten: this agreement, ~~elsewhere~~ ~~hereby~~ ~~attached~~]*
3.    **Obligations and Liabilities of Escrow Agent.**

*[handwritten: IK]*

(a)    The duties and obligations of the Escrow Agent shall be
determined solely by the express provisions of this Escrow Agreement, and the Escrow
Agent shall not be liable for the performance of any other duties and obligations, except
as specifically set forth in this Escrow Agreement.

(b)    Escrow Agent shall not be responsible in any manner whatsoever
for any failure or inability of Seller or Purchaser or of anyone else, to perform or comply
with any of the provisions of this Escrow Agreement.

(c)    Escrow Agent shall not be bound by any modification,
cancellation or rescission of this Escrow Agreement unless such modification,
cancellation or rescission is in writing, signed by Seller and Purchaser, and expressly
consented to by the Escrow Agent.

(d)    Escrow Agent shall not be liable for any error of judgment, or any
action taken or omitted to be taken hereunder, except in the case of its willful misconduct
or gross negligence.

(e)    Delivery by Escrow Agent of the Deposit pursuant to the
provisions of this Escrow Agreement shall constitute a complete discharge and
satisfaction of all obligations of the Escrow Agent hereunder.

(f)    Nothing contained herein shall be deemed to preclude Escrow
Agent at any time or for any reason from depositing the Deposit with a Court of
competent jurisdiction, and abiding by the determination of such Court with respect

{Escrow Agreement / 00989268.DOCX / 2}

1



thereto. In such event, such delivery shall constitute a complete discharge and release of the Escrow Agent.

(g)     Escrow Agent shall be entitled to rely upon any written notice, waiver, receipt, or other document which Escrow Agent in good faith believes to be genuine. *Notice to be given to all parties. JL*

(h)     Upon performance of this Escrow Agreement, Escrow Agent shall be deemed released and discharged of any further obligations hereunder.

(i)     The parties acknowledge that Escrow Agent is acting solely as a stakeholder at their request and for their convenience and that Escrow Agent shall not be liable for either party for any act or omission on its part unless taken or suffered in bad faith or in willful disregard of this Agreement or involving gross negligence on the part of Escrow Agent. The parties jointly and severally agree to defend, indemnify and hold Escrow Agent harmless from and against all costs, claims and expenses (including reasonable attorneys' fees) incurred in connection with the performance of Escrow Agent's duties hereunder, except with respect to actions or omissions take or suffered by Escrow Agent in bad faith or in willful disregard of this Agreement or involving gross negligence on the part of Escrow Agent. This obligation shall survive the termination of this Agreement.

4.     <u>Successor Escrow Agent</u>.     In the event Escrow Agent is no longer able or willing to serve, Escrow Agent shall have the ~~exclusive~~ right to appoint a successor Escrow Agent who shall be bound by the terms and conditions set forth herein. *Successor Escrow Agent shall be a duly NYS licensed Title Underwriter approved by ~~both~~ the depositors JL*

5.     <u>Binding Effect</u>.     This Escrow Agreement shall inure to the benefit of and shall be binding upon the respective heirs, personal representatives, successors, and assigns of the Parties hereto. The Parties hereto covenant that they will execute all instruments and documents and will take all steps which may be necessary in order to implement the provisions of this Escrow Agreement.

6.     <u>Governing Law</u>.     This Escrow Agreement shall construed and interpreted according to the laws of the State of New York, without given effect to any conflict of law or choice of law provision or rule.

7.     <u>Seller's Liability Limited to the Deposit</u>.     Notwithstanding anything contained herein to the contrary, the Seller's liability for any costs and expenses for the Surrender shall be and is hereby limited to the amount of the Escrow Fund.

8.     <u>Miscellaneous</u>.     This Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective heirs, executors, legal representatives, successors, successors-in-title and assigns. This Agreement constitutes the entire agreement between the parties as to the matters set forth herein. There are no

{Escrow Agreement / 00989268.DOCX / 2}

③

other such agreements, either oral or written. In the event of a conflict between the terms of the Contract and this Agreement, the terms of this Agreement shall control. Capitalized terms contained herein and not otherwise defined shall have the same meanings as assigned to them in the Three Party Agreement.

9.    **Notice.** All notices given pursuant to this Agreement shall be sent in writing by the parties hereto or by their attorneys and shall be given by personal service, certified mail, return receipt requested or nationally recognized overnight delivery service (such as Federal Express), postage or delivery charge prepaid, addressed to the appropriate party at the address set forth below:

To Depositor #1:  FIA 164 Holdings, LLC
7280 West Palmetto Road
Suite 106-N
Boca Raton, FL 33433

To Depositor #2  Anne Chitever
P.O box 3201608
Brooklyn, P.Y. 11232

Escrow Agent:    Riverside Abstract LLC
Lexington Towers
212 Second Street, Suite 502
Lakewood, New Jersey 08701

Notices shall be deemed to have been duly given upon the earlier of: (a) actual receipt, if delivered by personal service; (b) one (1) business day after having been timely deposited for overnight delivery, fee prepaid, with a nationally recognized overnight delivery service; or (c) three (3) business days after having been deposited in any post office or mail depository regularly maintained by the U.S. Postal Service and sent by certified mail, return receipt requested, and in the case of clause (b) and (c) irrespective of whether delivery is accepted. A new address for notice may be established by written notice to the other; provided, however, that no change of address will be effective until written notice thereof actually is received by the party to whom such address change is sent.

10.    **Facsimile; Counterparts.** This Agreement may be executed by facsimile or PDF signatures and may be executed in any number of counterparts, which together, shall constitute one single agreement of the parties.

11.    **Prevailing Party.** In the event any litigation, proceeding or action is brought or commenced to enforce any of the terms or conditions of this Agreement, the prevailing party in such action or proceeding shall be entitled to recover their reasonable attorneys' fees from the non-prevailing party.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

{Escrow Agreement / 00989268.DOCX / 2}

3



Intentionally
Blank

{Escrow Agreement / 00989268.DOCX / 2}



IN WITNESS WHEREOF, Seller, Purchaser and Escrow Agent have executed this
Agreement as of the day and year first above written.

Depositor: 1:

FIA 164 HOLDINGS, LLC

By: _____
Name: ~~Jeffrey~~ Randall Karp
Title: ~~Member~~ Authorized Signatory

ESCROW AGENT:

RIVERSIDE ABSTRACT, LLC

By: _____
Name:
Title: x. f/c Close

Depositor 2:

_____
INNA   KHITERER

EXHIBIT "A" TO ESCROW AGREEMENT BETWEEN RIVERSIDE ABSTRACT
LLC, INNA KHITERER AND FIA 164 St HOLDINGS LLC

Deposit of Funds in Escrow

FIA 164 St Holdings LLC ("FIA") has deposited with the Riverside Abstract as
Escrow Agent ("Escrow Agent") the amount of one hundred thousand dollars ($125,000)
("Escrowed Funds") in the form of (1) certified funds or (2) wire transfer. Escrow Agent
acknowledges receipt of such funds.  Inna Khiterer has deposit into escrow ownership
documents (the "Escrowed Documents") for two cooperative apartments: 440 W 164 St
#32 and 440 W 164 St #44. Riverside is authorized to submit transfer documents for
recording with city Register only upon Termination of Escrow Agreement and release of
"Escrowed funds" to Khiterer and "Escrowed Documents" to FIA.

Escrow Funds shall not be released until Inna Khiterer executes Acris Documents
for Apartment #44 and Apartment #32 on behalf of the sellers.

Release of Escrowed Funds and Documents

Escrow Agent shall release all Escrowed Funds to Inna Khiterer or any party she
might designate in writing upon "Removal of the Appointed 7A Administrator" for the
premises ("Premises") 440 W 164 Street, NY, NY 10032 and contemporaneously release
the Escrowed Documents to FIA. Full release of this Escrow shall occur at the early of
"A" or "B".

"A" The parties agree that the following events shall be deemed "Removal of the
Appointed 7A Administrator" for the purposes of release of Escrowed Funds and
Escrowed Documents.

1. Termination and/or Suspension of 7A Administrator by order of a court of
   competent jurisdiction.
2. Consent by any governmental entity having such powers for suspension of 7A
   Administrator's powers.
3. Court order or consent prohibiting 7A Administrator from performing work and
   placing liens against the Premises for any such work.
4. Immediately upon filing of bankruptcy by FIA.
5. Upon filing a foreclosure or other transfer of the underlying mortgage, interest in
   the cooperative or transferor assignment of any interest in the building.

"B" On December 1, 2014 notwithstanding the discharge of the 7A Administrator
the escrow funds should be released to Inna Khiterer

Upon Inna Khiterer and or her representative presenting proof of the above stated
events to the Escrow Agent, the parties agree and direct Escrow Agent to release
Escrowed Funds to Inna Khiterer and Escrowed Documents to FIA.

All expenses associated with this Escrow Agreement from execution to
termination, including any Escrow Agent expenses whatsoever shall be the liability of
FIA.

Effect of Bankruptcy: FIA acknowledges and agrees that the Escrowed Funds are
an asset and property of Inna Khiterer and such funds being held in escrow as assurance

1

EXHIBIT "A" TO ESCROW AGREEMENT BETWEEN RIVERSIDE ABSTRACT
LLC, INNA KHITERER AND FIA 164 St HOLDINGS LLC

of her cooperation in removal of 7A Administrator, irrespective of whether or not the 7A
Administrator is released, the $125,000 is held for convenience only and shall be released
to Inna Khiterer or her order on November 30, 2014.

FIA Holdings LLC represents that it has:

(1) Funds necessary to effect Removal of the Appointed 7A Administrator (e.g.,
posting the bond and funds necessary for repairs deemed necessary by HPD).
(2) Management Company willing and able to undertake management and willing
to submit its credentials to court and or HPD in application for Removal of the Appointed
7A Administrator and to testify as applicable.

Inna Khiterer agrees to reasonably cooperate at FIA's expense in seeking court
approval in Removal of the Appointed 7A Administrator. Such scope of cooperation shall
be specifically limited to appearing in court for testimony or signing supporting affidavits
at reasonable times upon reasonable prior written notice.

All expenses associated with Removal of the Appointed 7A Administrator
including but not limited to any legal fees, bonds and or any other expenses shall be
responsibility of FIA.

The undersigned represent that they are fully authorized to execute this Escrow
Agreement which representation is relied upon by all parties to this Escrow Agreement
and the undersigned agree to be personally liable in the event any such representation is
false.

This Agreement shall inure to the benefit of and be binding upon the parties
hereto and their respective heirs, executors, legal representatives, successors, successors-
in-title and assigns. This Agreement constitutes the entire agreement between the parties.
There are no other oral or written agreements modifying this Agreement.

_____                                    _____
Riverside Abstract                                         FIA 164 St Holdings LLC

                        _____
                        Inna Khiterer

ALAN HIRSCH
Notary Public, State of New York
No. 01HI6095704
Qualified in New York County
Commission Expires July 14, 2015

# EXHIBIT 3

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
-----------------------------------------------------------------X
LOTHAR KROLL,, ANDREAS KROLL, INNA KHITERER
and SERGEI LEONTEV, individually and
derivatively as shareholders of
440 WEST 164TH STREET HDFC;

|  |  |
|---|---|
| | Index No.          /14 |
| **Plaintiffs,** | Plaintiff designates New York County as the Place of trial. |
| -against- | The basis of venue is the situs principal place of business of Plaintiffs |
| 440 WEST 164TH STREET HDFC; FIA 164TH ST HOLDINGS LLC a/k/a FIA 164 HOLDINGS LLC; SAC 4902071714, LLC, MARK SCHWARTZ; DAVID GOLDWASSER; CITY OF NEW YORK; | |
| | **SUMMONS** |
| **Defendants.** | |

-----------------------------------------------------------------X

**TO THE ABOVE NAMED DEFENDANTS:**

   **YOU ARE HEREBY SUMMONED** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiffs' Attorneys within twenty (20) days after the service of this summons, exclusive of the day of service (or within thirty (30) days after service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated: New York, New York

      December 18, 2014

      Yours, etc.

      BEDFORD MANTIA LLP

      By: James C. Mantia, Esq.
      *Attorneys for the Plaintiffs*
      10 East 40th Street, Suite 3307
      New York, New York 10016
      (212) 257-5843

## SERVICE LIST

440 WEST 164TH STREET HDFC
C/O Secretary of State
Legal Services Division
41 State St.
Albany, New York 12231

FIA 164TH ST. HOLDINGS LLC a/k/a FIA 164 HOLDINGS LLC
C/O Secretary of State
Legal Services Division
41 State St.
Albany, New York 12231

SAC492071714, LLC
C/O Secretary of State
Legal Services Division
41 State St.
Albany, New York 12231

RIVERSIDE ABSTRACT LLC
Suite 208
3839 Flatlands Avenue
Brooklyn, New York 11234

MARK SCHWARTZ
115 Broadway
Suite 302
New York, New York 10006

DAVID GOLDWASSER
115 Broadway
Suite 302
New York, New York 10006

CITY OF NEW YORK
c/o Corporation Counsel,
100 Church Street,
New York, New York 1007

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------------X
LOTHAR KROLL, INNA KHITERER, ANDREAS KROLL,
and SERGEI LEONTEV, individually and
derivatively as shareholders of
440 WEST 164TH STREET HDFC;

Index No.              /14

                              Plaintiffs,

              -against-                                              **COMPLAINT**

440 WEST 164TH STREET HDFC; FIA 164TH ST
HOLDINGS LLC a/k/a FIA 164TH HOLDINGS LLC;
SAC 492071714, LLC; MARK SCHWARTZ; DAVID
GOLDWASSER; RIVERSIDE ABSTRACT, LLC;
CITY OF NEW YORK; and

                              Defendants.
--------------------------------------------------------------------X

         The Plaintiffs, INNA KHITERER, ANDREAS KROLL, LOTHAR KROLL

and SERGEI LEONTEV, by their attorneys, as and for their complaint against the

Defendants, allege as follows:

## NATURE OF THE ACTION

         1.        This proceeding involves the breach of an agreement between FIA

164 St Holdings LLC  and Plaintiffs to buy from individual plaintiffs <u>five </u>fully renovated

cooperative apartments  and simultaneous conveying to SAC 492071714, LLC  a loan

to the HDFC held by Shanghai Holdings, LLC

         2.        As part of the transaction the Defendants also agreed to  provide

funds for the cooperative for making necessary repairs to the building as part of

assuming  the obligation of the  lender.

         3.        However, instead the Defendants failed to honor their obligations

and instead conspired to foreclose upon the note, seek default interest on the mortgage

and to otherwise acquire Plaintiffs shares to facilitate their taking control of the board of

the residential cooperative HDFC

       4.    .Plaintiffs agreed to first sell three apartments (Apartment #31, #42

and #1) for significantly under market value under condition that FIA 164 Holdings LLC

(purchaser of the units) (hereafter "FIA") and  to SAC 492071714, LLC a mortgage on

the property(assignee of the mortgage from Shanghai Holdings)(hereafter "SAC")  so

that FIA and SAC would do the following:

      a.    Pay real estate taxes owed by the cooperative
      b.    Secure removal of 7A Administrator by advancing
               funds necessary to do repairs.

    5.    This would benefit the Plaintiffs as it would increase the value of the other

two remaining apartments that the Defendant agreed to purchase at market value.

    6.    The additional consideration received for the sale of the remaining two

apartments would be shared amongst the Plaintiffs to offset the reduced sale price of

the first three apartments. After the sale of the first three apartments, Defendants have

not provide any funds to satisfy the existing tax lien putting the building at risk for being

foreclosed upon.

    7.    In addition, FIA has also not paid monthly maintenance to the court

appointed 7A Administrator during the pendency of the transaction as they have

expressly agrred to do and SAC failed to provide funds available to the cooperative

pursuant to the mortgage.  Moreover, *FIA and SAC have not made any motions* to

remove 7A Administrator. In addition, FIA and or Mark Schwartz have not paid

maintenance to court appointed 7A Administrator depriving court the appointed

Administrator from funds necessary to operate the building and pay its expenses.

    8.    At closing, FIA deposited into escrow $125,000 with Defendant Riverside

Abstract LLC (hereafter "Riverside") to ensure its performance.  As per the terms of the

escrow agreement entered into by the parties the $125,000 was to be unconditionally released at the earlier of the removal of the 7A or December 1, 2014.

9.      Riverside has refused to release the $125,000 being held in escrow funds although such was duly demanded.

10.     Further after closing, FIA through Mark Schwartz, used the proxies for the shares of Khiterer and Leontev to call a special meeting and to get themselves elected as members of the board of directors for the HDFC.

## THE PARTIES

11.     That Plaintiff, INNA KHITERER (hereafter "INNA"), at all relevant times hereinafter mentioned, was and still is an individual who is domiciled in the State of Pennsylvania.

12.     At all relevant points alleged herein, INNA was and still is  a shareholder of 440 WEST 164TH STREET HDFC (hereafter "HDFC"), owner of Apartment 32 of the building located at 440 West 164TH Street, New York, New York 10032 (hereafter "building") and was contract vendee of Apartment 42 of the building.  (collectively hereafter "INNA APTS")

13.     That Plaintiff, ANDREAS KROLL (hereafter "ANDREAS"), at all times hereinafter mentioned, was and still is an individual who is domiciled in the State of New York.

14.     At all relevant points alleged herein, ANDREAS was a shareholder of the HDFC and owner of Apartment 31 of the building.

15.     That Plaintiff, LOTHAR KROLL (hereafter "LOTHAR"), at all times hereinafter mentioned, was and still is an individual who owned a cooperative apartment located in the State of New York, County of New York.

16.     At all relevant points alleged herein, LOTHAR was a shareholder of the

HDFC and owner of Apartment 1 of the building.

17.    That Plaintiff, SERGUEI LEONTEV (hereafter "SERGUEI"), at all relevant

times hereinafter mentioned, was and still is an individual who is domiciled in the State

of New York, County of New York.

18.    At all relevant points alleged herein, SERGUEI was a shareholder of the

HDFC and owner of Apartment 44 of the building.

19.    Upon information and belief, Defendant 440 WEST 164TH STREET HDFC

(hereafter "HDFC") is a residential cooperative formed on or about December 28, 1982.

20.    The HDFC is a domestic co-operative corporation whose principal place of

business is in the State of New York, County of New York.

21.    Upon information and belief, Defendant FIA 164 ST HOLDINGS LLC a/k/a

FIA 164 HOLDINGS LLC (hereafter "FIA") is a domestic limited liability company formed

under the laws of the State of New York.

22.    Upon information and belief, FIA's principal place of business is located in

the State of New York, County of New York.

23.    Upon information and belief, Defendant SAC 492071714, LLC (hereafter

"SAC") is a domestic limited liability company formed under the laws of the State of New

York.

24.    Upon information and belief, SAC's principal place of business is located

in the State of New York, County of New York.

25.    Upon information and belief, Defendant RIVERSIDE ABSTRACT LLC

(hereafter "RIVERSIDE") is a domestic limited liability company formed under the laws

of the State of New York.  Upon information and belief, RIVERSIDE's principal place of

business is located in the State of New York, County of Kings.

26.    Upon information and belief, RIVERSIDE's principal business is that of a

title company.

27.    Upon information and belief, Defendant MARK SCHWARTZ (hereafter "SCHWARTZ") is an individual who is domiciled in the State of New Jersey, or whose principal place of business is located in the State of New York.

28.    Contracts between SAC and HDFC and FIA and plaintiffs where entered in the state of New York.

29.    Upon information and belief, SCHWARTZ is a member and principal of FIA and is responsible for the day to day operation of FIA.

30.    Upon information and belief, Defendant DAVID GOLDWASSER (hereafter "GOLDWASSER") is an individual who is domiciled in the State of Florida, or whose principal place of business is located in both state of Florida and the State of New York.

31.    Upon information and belief, GOLDWASSER is a member and principal of SAC and is responsible for the day to day operation of SAC.

32.    Upon information and belief, Defendant CITY OF NEW YORK, is a municipality and/or governmental body who governs the City of New York, County of New York and is the party to whom the HDFC pays taxes.

33.    Upon information and belief, the Defendant City of New York is a necessary party as they are a lien holder on the property owned by the HDFC.

34.    Upon information and belief GLORIA HOPSON is the court appointed 7A Administrator for the building (hereafter "HOPSON"), and her principal place of business is located in the State of New York, County of New York.

35.    Upon information and belief, HOPSON was appointed to manage and operate the building pursuant to the order of the Hon. Cheryl Gonzalez dated February 28, 2014 (hereafter "7A ORDER") pursuant to Article 7-A of the Real Property Actions and Procedures Law.

36.     Pursuant to the terms of the 7A ORDER, HOPSON is directed by the court to collect the monthly maintenance from the shareholders of the HDFC and to correct any conditions which are dangerous to the life, health, or safety of the occupants in the building.

## RELEVANT FACTS WITH RESPECT TO THE FORMATION OF THE HDFC

37.     Plaintiff repeats and reiterates paragraphs one (1) through thirty six (36) as if more fully set forth herein.

38.     The HDFC is housing Cooperative Corporation formed on or about December 28, 1982 to own and maintain the building.

39.     Upon information and belief at the time the HDFC formed and the deed was conveyed for the building, the HDFC made various covenants in the deed that was conveyed by the City of New York which ran with the land.

40.     Upon information and belief, upon transfer of title by the City of New York the HDFC assumed management and operation of the building.

41.     At the formation of the co-operative the HDFC enacted certain By-Laws for the cooperative corporation with respect to its operation for the maintenance of the building.

42.     Pursuant to Article IV, Section one (1) of the By-Laws for the HDFC, a board of directors was to be formed for the HDFC.  The By-Laws specifically state that only a "shareholder" over the age of eighteen (18) is eligible to serve as Board member.

43.     Pursuant to Article V, Section one (1) of the By-Laws for the HDFC, an officers of the corporation also have to be shareholders over the age of eighteen (18).

44.     The By-Laws provide in Article IV, Section eight (8) that in order to be eligible to vote for Directors and Officers that a shareholder may not be more than two

months delinquent in payments due to the Corporation.

45.    Article XII, Section 1 of the By-Laws provide that the By-Laws may only be amended or repealed by a majority vote of eligible shareholders provide that the proposed amendment be provided in the Notice of Meeting.

46.    Article X, Section 4 of the By-Laws provide that an officer or director of the HDFC may only enter into a contract with the HDFC upon full disclosure and only if approved by majority vote of disinterested directors of the board or alternatively, by a majority of the shareholders.

## THE DECLINE OF THE BUILDING

47.    Plaintiffs repeat and reiterate the allegations of paragraphs one (1) through forty six (46) as more fully set forth herein.

48.    The HDFC began to experience fiscal problems in 2000.

49.    In 2000, there were many shareholders of the HDFC who were in arrears more than two months.

50.    The HDFC failed to pay its property taxes and the City of New York placed a tax lien on the building.

51.    The City of New York thereafter commenced an in rem tax foreclosure action against the HDFC in the Supreme Court of the State of New York under number 58000/00.

52.    Notwithstanding the fact that the proceeding was dormant for many years within the last year the City of New York began to continue to pursue the proceeding

53.    The building is presently in immediate danger of being foreclosed upon in the context of the Tax Lien Foreclosure.

54.    Upon information and belief, the HDFC is not presently engaged in defending the foreclosure action.

55.    Upon the sale of the building in the foreclosure proceeding, the residential

cooperative will be dissolved by operation of law and the building will cease to be a

cooperative.

56.    The shareholders of the building will lose the value of their investment and

equity in their apartments and the shareholders will lose their status as shareholders of

the building as by operation of law they would revert to tenants.

57.    Further due to numerous violations being placed on the property and

because the building is in need of major repairs, HPD commenced an action under

index number 13180/12 (hereafter "7A action") seeking the appointment of a 7A

administrator to rehabilitate the conditions which threatened the health and safety of the

occupants of the building.

58.    At the time the 7A action was commenced Plaintiff Inna Khiterer, Lothar

Kroll, and the former shareholder Mitchell St Clair were members of the board of the

HDFC.

59.    Plaintiffs elected after approval from the majority of the board members to

retain counsel to defend the 7A proceeding.

60.    In order to raise the funds needed to rehabilitate the building and to avoid

the appointment of 7A Administrator, Plaintiff INNA obtained financing for the building.

61.    The cooperative was unable to secure financing from banks or

institutional lenders due to the City of New York's Tax Lien and because of the large

amount of maintenance arrears from the shareholders.

62.    Inna then secured the loan from Shanghai Holdings LLC a limited liability

company in which she was a member. The loan was for $150,000 and it was supposed

to be used by the HDFC to pay outstanding liens, judgments and to address some of

the major health and safety conditions which plagued the building and for attorney's

fees.

63.    As provided by the terms of the By-Laws stated above, INNA fully
disclosed to the board that the loan would be made by Shanghai Holdings LLC..

64.    Thereafter a majority of the disinterested board members voted to approve
the resolution to accept the loan for the HDFC in full compliance with the terms of the
By-Laws and approval of the corporation's counsel.

65.    After the trial in the 7A action, the court granted the Petitioner HPD's
application for the appointment of Hopson as 7A Administrator of the building.

## THE PLAINTIFFS ATTEMPTS TO TRANSFER THEIR APARTMENTS

66.    After the appointment of the 7A administrator, Plaintiffs decided to sell
their apartments rather than remain in the building.

67.    Plaintiffs after months of looking for prospective purchasers connected
with Defendants Schwartz and Goldwasser.

68.    The Plaintiffs, through negotiations conducted largely by Plaintiff INNA,
came to an agreement with Defendants Schwartz and Goldwasser where they agreed
to purchase Plaintiffs apartments and to purchase Plaintiff INNA's interest in Shanghai
Holdings LLC who held the mortgage and Shanghai's interest in a commission
agreement with the HDFC.

69.    Defendant Schwartz formed a company, Defendant FIA, in order to
purchase the shares and ownership interest in Plaintiffs apartments.

70.    Defendant Goldwasser agreed to purchase the interest of Shanghai
Holdings LLC.

71.    Defendant Goldwasser then formed Defendant SAC for the purposes of
purchasing the mortgage and commission agreement.

72.    Due to the fact that the building was fighting a large tax lien and had a 7A

Administrator in place, Plaintiffs' apartments significantly lowered in value.

73.     Where normal market value for Plaintiffs apartments approximately ranged

from $375,000-$425,000 depending if the apartment was a two bedroom to four

bedroom apartment, the Plaintiffs' apartments were because of the 7A appointment and

tax lien were valued significantly less (hereafter "reduced market rent").

74.     The agreement reached between Schwartz, Goldwasser, FIA, and SAC

(hereafter "purchasers") and Plaintiffs provided that Goldwasser and/or SAC would

purchase the note from Shanghai and FIA /or Schwartz's purchase of the Plaintiffs'

apartments.

75.     The purchasers are sophisticated investors who are knowledgeable of real

estate in the area and as to the risks entailed in purchasing the Plaintiffs apartments. In

addition, purchasers signed Disclosure as to the cooperative and have agreed to

purchase apartments "AS IS".

76.     The agreement reached between the purchasers and Plaintiffs provided

that Schwartz and/or FIA would first purchase shares of Apartments 31, 1, and 42 at the

reduced market value subject to the later purchase of apartments 32 and 44 at normal

market value for these two apartments.

77.     The Purchasers agreed that for the period between the first and second

closings that they would pay the maintenance for all five apartments - # 1, #32, #44, #42

and #44.

78.     The agreement reached between the Plaintiff and purchasers further

required that Purchaser to provide sufficient funds to the HDFC to rehabilitate the

building so that it could ask the court to remove the 7A Administrator and pay real

estate taxes in tax lien foreclosure which will bring the apartments #32 and #44 to

market value

79.     The agreement provided that after removal of the 7A administrator, the purchasers would then close on the purchase of the shares of the remaining two apartments (32 and 44) for the market price of such apartment. Further SAC's vesting of rights to Shanghai's Mortgage was contingent upon closing of apartment #32 and #44 at market value.

80.     The first closing for the shares of Apartments 31, 1, and 42 occurred on August 4, 2014.

81.     The stock certificates of Apartments 31, 1, and 42 were delivered to FIA and/or Schwartz at the closing.

82.     FIA and/or Schwartz rights for apartment #31. #1 and #42 were contingent until such time as they closed on the purchase of the shares of apartments 32 and 44 at market value.

83.     Defendants alleged that they were required to record the transfer of the shares on apartments #31, #1, #42 within fifteen (15) days in ACRIS when such sale was contingent upon purchasing # 32 and #44 at market rate after stabilizing the building.

84.     Purchasers in addition agreed to pay Plaintiff INNA additional consideration of $125,000 in exchange for her assistance if so be needed in aiding them in removing the 7A administrator but which was not contingent on removal of 7A Administrator.

85.     The Purchasers entered into an escrow agreement with Plaintiff INNA and Defendant RIVERSIDE ABSTRACT LLC (hereafter "RIVERSIDE") on August 4, 2014 so that the $125,000 would be held in escrow by RIVERSIDE in light of the above stated agreement.

86.     The escrow agreement provided that RIVERSIDE would release the

escrow of $125,000 to Plaintiff INNA at the earlier occurrence of the 7A's removal from

the property or the passing of December 1, 2014

87.    7A administrator was not removed prior to December 1, 2014.

88.    Accordingly since December 1, 2014 has passed, pursuant to the express

terms of the escrow agreement, Plaintiff INNA is entitled to the immediate release of the

$125,000.

89.    Plaintiff INNA has made a demand on Defendant RIVERSIDE for the

release of the escrow pursuant to the Escrow agreement.

90.    RIVERSIDE has not released the $125,000 to Plaintiff INNA as provided

by the express terms of the escrow agreement notwithstanding Plaintiff INNA'S demand

for the release of the funds.

91.    To date the purchasers have not closed on the purchase of the remaining

shares for apartments 32 and 44 and accordingly FIA and/or Schwartz transfer of the

ownership interest of apartments 31, 1, and 42 have not yet vested and SAC and/or

Goldwasser interested in Shanghai's mortgage and commission agreement has not

vested as such sale was contemporaneous.

## THE RECENT ELECTION OF SCHWARTZ VIOLATES THE BY-LAWS AND IS A NULLITY

92.    Due closing of the transfer of the shares for apartments 31, 1, and 42 with

FIA and/or Schwartz and because of Purchasers promise to purchase apartments 32

and 44 for market value, the Plaintiffs resigned as members of the board for the HDFC

on or about August 2014.

93.    FIA called for the special meeting of the shareholders to elect new

directors which was scheduled for November 10, 2014.

94.    At the special election Defendants FIA and SCHWARTZ appeared with

the Plaintiffs shares of apartments 31, 1, and 42 although such transfer was subject to

the closing of the transfer of shares for apartments 32 and 44.

95.    Defendants FIA and SCHWARTZ representing having authority to vote at
the election because they represented that they had authority to vote as shareholders of
apartments 31, 1, and 42 even though their rights had not yet vested in the shares of
the apartments

96.    Under false pretenses that they were about to close for #32 and #44 have
obtained proxies to vote for apartments #32 and #44 which were in escrow.

97.    At the special election not only did FIA and SCHWARTZ vote by
improperly using Plaintiffs shares(using 5 votes to which they were not entitled), FIA
and SCHWARTZ nominated himself to the board and voted for himself improperly using
Plaintiffs' proxies

98.    Moreover, even though FIA was only a contingent shareholder at that time
and they were in arrears of more than 2 months as they have failed to pay maintenance
to the court appointed 7A administrator although specifically were obligated to do so
pursuant to the express terms of the Agreement with Plaintiffs.

99.    In light of the foregoing, SCHWARTZ's election to the board of the
directors of the HDFC, violated the terms of By-Laws as stated above since only
shareholders and only the ones who are not more than two months in the arrears are
allowed to be member and/or officers of the HDFC.

100.   In addition to FIA and SCHARTZ'S election to the board of the HDFC, the
special election also resulted in the election of three other board members who were
also not shareholders of any apartment in the HDFC or were in arrears.

101.   In addition, the November 10, 2014 was improper because it improperly
elected four board members when there are presently only three board positions
pursuant to the By-Laws.

102.    The election further violated the By-Laws because the meeting allowed shareholders who were in arrears more than two months to be elected to the board of the HDFC.

103.    Further the election conducted at the special meeting was improper because the shareholders voted to dispense with the two month arrears restriction even though it was specifically forbidden by the By-Laws of the HDFC.

104.    The shareholders election to dispense with the two month arrears voting restriction at the special meeting would be tantamount to amending the By-Laws notwithstanding that proper procedures were not followed for making any such amendment.

105.    The By-Laws provide that in order to amend the By-Laws the notice of the meeting or special must advise all shareholders specifically put in notice to the shareholders that there is was a proposed amendment to the By-Laws being voted on at the meeting and the substance of the proposed amendment.

106.    However, the HDFC did not provide in its notice for the special meeting any proposed amendment to the By-Laws nor of their intention to dispense with the two month arrears restriction for conducting the election of new officers and/or directors of the HDFC.

107.    Accordingly the HDFC's allowing the shareholders who owe more than two months to vote also invalidates the election of the new board of the HDFC conducted at the special meeting on November 10, 2014.

108.    In light of the foregoing the elections and the directors who were elected are invalid, the results of the election are a nullity and void ab initio.

### AS AND FOR THE FIRST CAUSE OF ACTION
### FOR ALL PLAINTIFFS AGAINST PURCHASERS
#### (Breach of Contract)

109.   Plaintiffs repeat and reiterate paragraphs one (1) through one hundred and nine (109) as if more fully set forth below.

110.   Plaintiffs' agreed to sell the shares of apartments of apartments 31, 1, and 42 provided that Purchasers later purchase the shares of apartments 32 and 44 at market value and Plaintiffs  agreed to split the aggregate proceeds of the sales of the five apartments.

111.   Inna arranged for Shanghai to assign its interest to SAC only under condition that Inna would receive market price for her apartment.

112.   The Purchasers received the Plaintiffs shares for apartments 31, 1, and 42 at the first closing between the parties which Purchaser were to hold in escrow.

113.   The Purchasers to date have not closed on any purchase of the shares for the market value for apartments 32 and 44.

114.   The Purchasers have breached the agreement it had with Plaintiffs by failing to purchase apartments 32 and 44 at market value.

115.   The Plaintiffs have been damaged by the Purchasers failure to receive the agreed upon consideration for the entire transaction which factored in the Purchasers purchase of apartment 32 and 44 at market value to offset the sale of Apartments 31, 1 and 42 at reduced market value.

116.   Therefore, the Plaintiffs demand judgment against the Purchasers in amount to be determined by the court but no less than $1,000,000.

## AS AND FOR THE SECOND CAUSE OF ACTION
## FOR PLAINTIFF INNA AGAINST PURCHASERS AND RIVERSIDE
### (Breach of Contract)

117.    Plaintiffs repeat and reiterate paragraphs one (1) through one hundred sixteen (116) as if more fully set forth below.

118.    The escrow agreement provided that Plaintiff INNA would receive additional $125,000 by Purchasers upon removal of 7A Administrator or passing December 1, 2014, whichever is earlier.

119.    Pursuant to the express terms of the escrow agreement entered into between purchasers, Plaintiff INNA, and RIVERSIDE, the Plaintiff INNA was to receive the $125,000 upon the earlier of the 7A being removed from the property or the passing of December 1, 2014.

120.    The Defendant RIVERSIDE agreed to hold $125,000 in escrow subject to the above stated terms for release of the escrow as provided in the escrow agreement.

121.    The Defendant RIVERSIDE failed to release the escrow to Plaintiff INNA notwithstanding that December 1, 2014 has passed.

122.    The Plaintiff INNA has been damaged by the Defendant RIVERSIDE's failure to release the escrowed funds from the Purchasers.

123.    Accordingly, Plaintiff INNA demands that a judgment be entered in her favor against RIVERSIDE declaring that Riverside and Purchasers are liable for breach of contract in an amount to be determined by the court but no less than $300,000 for all contractual and consequential damages entitled by Plaintiff Inna under the agreement or under law.

## AS AND FOR A THIRD CAUSE OF ACTION
## FOR ALL PLAINTIFFS AGAINST PURCHASERS
### (Specific Performance)

124.    Plaintiffs repeat and reiterate paragraphs one (1) through one hundred and twenty three (123) as if more fully set forth herein.

125.    Pursuant to the terms of the agreement between Plaintiffs and Purchasers, Purchasers were obligated to purchase apartments 32 and 44 at market value.

126.    Purchasers have not performed their obligation the under agreement with the Plaintiffs by purchasing the shares of apartments 32 and 44 at market value.

127.    Accordingly, the Plaintiffs ask that a judgment be entered against the purchasers to specifically perform under the terms of their agreement with Plaintiff by directing Purchases to close on the sale of the shares of apartments 32 and 44 at market value.

## AS AND FOR A FOURTH CAUSE OF ACTION
## FOR ALL PLAINTIFFS AGAINST PURCHASERS
### (Fraud in the Inducement)

128.    Plaintiffs repeat and reiterate paragraphs one (1) through one hundred and twenty seven (127) as if more fully set forth herein.

129.    In the course of the negotiation of the agreement between Purchasers and Plaintiff's agreement to purchase the Plaintiffs' apartments, Purchasers made representations to the Plaintiff that it would purchase apartments 31, 1, and 42, then remove the 7A administrator for the building, pay real estate taxes and then purchase the shares for the apartment 32 and 44 at market value due to the removal of the 7A administrator and payment of real estate taxes.

130.    The Purchasers made the foregoing representations to the Plaintiffs in order to induce the Plaintiffs into entering the agreement with the Purchasers convey

their interests in Plaintiffs' apartments to Purchasers.

131.    The Purchasers made the foregoing representations to the Plaintiffs even

though the Purchasers knew or should have known that the representations were false.

132.    Plaintiffs relied on such representations when agreed on this structure of

the transaction and when they agreed to sign the ACRIS documents for three

apartments before receiving full compensation.

133.    The Plaintiffs have been damaged due to the Purchasers fraudulent

inducement of Plaintiffs in order to facilitate the transfer of Plaintiffs' shares in their

apartments to the Purchasers.

134.    The Plaintiffs ask that court enter judgment in their favor against

Purchasers in an amount to be determined by the court but no less than $1,000,000 in

damages.

## AS AND FOR THE FIFTH CAUSE OF ACTION
### FOR PLAINTIFFS AGAINST PURCHASERS, RIVERSIDE AND THE HDFC
#### (Declaratory Judgment)

135.    Plaintiffs repeat and reiterate paragraphs one (1) through one hundred

and thirty four (134) as if more fully set forth herein.

136.    Plaintiffs demand that the court enter a declaration in favor of the Plaintiffs

and against Purchasers declaring that Purchasers have breach their agreement with the

Plaintiffs by failing to purchase the shares for apartments 32 and 44.

137.    Plaintiffs demand that the court enter a declaration in favor of the Plaintiffs

and against both Purchasers and RIVERSIDE declaring that Plaintiff INNA is entitled to

the release of the $125,000 being held in escrow held by RIVERSIDE pursuant to the

terms of the escrow agreement.

138.    Plaintiffs demand that the court enter a declaration in favor of the Plaintiffs

declaring that alleged elections to the HDFC's at the special meeting on November 10,

2014 the election of board members who are not shareholders of the HDFC and who

were more than two months in arrears to be elected to board of the HDFC,

violate(using 5 votes to which they were not entitled)s the terms of the By-Laws and the

elections are null and void ab initio.

## AS AND FOR THE SIXH CAUSE OF ACTION
### (Setting aside fraudulent conveyances and rescission of contract)

139.    The Plaintiffs repeat and reiterate paragraphs one (1) through one

hundred and thirty eight  (138) as if more fully set forth herein.

140.    Plaintiffs agreed to sell apartments 31, 1, and 42 at reduced market value

to FIA and the mortgage for the building to SAC, only if Purchasers purchased

Apartments 32 and 44.

141.    Plaintiffs provided the shares of Apartment 31,1, and 42 to Purchasers to

hold in escrow for the closing of Apartments 32 and 44.

142.    Plaintiffs provided the mortgage to the Purchasers to be held in escrow for

the closing of Apartments 32 and 44.

143.    Purchasers recorded the shares of Apartment 31, 1, and 42 in ACRIS

prior to closing of Apartments 32 and 44.

144.    The Purchasers have not closed on the sale of Apartments 32 and 44.

145.    The Purchasers recording of a transfer of shares for Apartment 31, 1, and

42 is false and a fraudulent recording of the conveyance.

146.    The Plaintiffs demand that a judgment be entered by the court to set aside

the sale of Apartments 31, 1, and 42 and direct the return the shares of Apartments 31,

1, and 42 to the Plaintiffs.

147.    The Plaintiffs demand that a judgment be entered by the court to set

aside the conveyance of the mortgage and to direct the return of the mortgage to

Plaintiffs.

### AS AND FOR THE SEVENTH CAUSE OF ACTION
### FOR PLAINTIFFS AGAINST DEFENDANTS
#### (Preliminary and Permanent Injunction)

148.    The Plaintiffs repeat and reiterate paragraphs one (1) through one forty

seven (147) as if more fully set forth herein.

149.    The Plaintiffs ask that the court enter a preliminary and permanent

injunction enjoining the HDFC and its purported recently elected Board of Directors by

vacating the results of the election of the board at the special meeting of the HDFC on

November 10, 2014.

150.    The Plaintiffs ask that the court further enter a preliminary and permanent

injunction enjoining HDFC, by the ineligible parties who were purportedly elected board

members of the HDFC at the special meeting on November 10, 2014, from acting in any

way in the name of the HDFC, from binding the HDFC or acting on behalf of HDFC, and

directing these improperly elected board members to cease and desist representing

themselves as members of the board of HDFC during the prosecution of this

proceeding.

151.    In addition, the Plaintiff INNA asks that the court enter a preliminary and

permanent injunction enjoining and directing the Defendant RIVERSIDE to immediately

release the $125,000 held in escrow by RIVERSIDE to Plaintiff INNA based upon the

terms of the escrow agreement.

152.    The Plaintiffs also ask that the court enter a preliminary and permanent

injunction enjoining and ordering Purchasers to purchase the Plaintiffs' shares in

apartments 32 and 44 at market value as per the terms of the agreement between

Plaintiffs and Purchasers.

153.    The Plaintiffs ask that the court enter an order declaring that the

outstanding real estate taxes be paid or an undertaking be provided to satisfy the City of

New York's tax lien the sale of the building in foreclosure . Further Plaintiffs seek a

preliminary injunction against the Defendant City of New York from foreclosing on the

building owned by the HDFC during the pendency of this proceeding

154.    Alternatively, the Plaintiffs ask that the court enter a preliminary and

permanent injunction enjoining and directing the HDFC and/or Purchasers to procure a

bond to post as an undertaking in the foreclosure action to prevent the foreclosure sale

of the property by the City of New York for its purported tax lien on the property.

**WHEREFORE**, the Plaintiffs demands judgment against the Defendants:

a.    *On the first cause of action entering a judgment for Plaintiffs against Purchasers for $1,000,000 for breach of contract;*

b.    *On the second cause of action entering a judgment in favor of Plaintiff INNA against the Purchasers and RIVERSIDE in the amount of $300,000 for breach of contract;*

c.    *On the third cause of action entering a judgment for Plaintiffs against the Purchasers directed them to specifically perform the terms of the agreement with the Plaintiffs and enjoining and directing the Purchasers to close the purchase of the shares of Apartments 32 and 44 at market value;*

d.    *On the fourth cause of action entering a judgment in favor of Plaintiffs against the Purchaser for $1,000,000 due to Purchasers' fraudulent inducement of Plaintiffs to sell the Plaintiffs' apartments;*

e.    *On the fifth cause of action entering a declaratory judgment in favor of Plaintiffs against Purchasers, RIVERSIDE and the HDFC for the grounds as set forth in the Complaint;*

f.    *On the sixth cause of action entering judgment in favor of Plaintiffs setting aside the transfers of the apartments 31, 1, and 42 and the transfer of the mortgage for the property and rescinding any sale agreement;*

g.    *On the seventh cause of action entering a preliminary and permanent injunction for Plaintiffs against the Defendants for*

**the grounds stated and for relief sought in the Complaint.**

Dated: New York, New York
        December 17, 2014

**Yours, etc.,**

_____

**BEDFORD MANTIA LLP**
By:  James C. Mantia, Esq.
*Attorneys for the Plaintiffs*
10 East 40th Street, Suite 3307
New York, New York 10016
(212) 257-5843

## VERIFICATION

STATE OF NEW YORK    }
                     } ss.:
COUNTY OF NEW YORK }


    INNA KHITERER, being duly sworn, deposes and says that she is one of

the Plaintiffs in the within proceeding that she has read the foregoing Complaint and

knows the contents thereof; that same are true to her own knowledge except as to

matters stated to be upon information and belief; and as to those matters she believes

them to be true.

INNA KHITERER

Sworn to before me this 17th
day of December 2014

Notary Public

HONG PAN
Notary Public - State of New York
NO. 01PA6292307
Qualified in Kings County
My Commission Expires Nov 4, 2017

# EXHIBIT 4

## PROXY

Know All Men by These Presents, that I/we, **SERGUEI LEONTEV**, the undersigned 100 % stockholder of 250 shares of Stock and Appurtenant Proprietary Lease of 440 West 164th Street Housing Development Fund Corporation, do hereby constitute and appoint **MARK SCHWARTZ/FIA 164 ST HOLDINGS LLC** as my/our true and lawful attorney and agent in my/our name, place and stead, to vote as my/our proxy for shareholders special meeting dated November 10, 2014 to vote at the meeting and to act as fully as I/we could do if personally present.

Witness my/our hand and seal this 5th day of November, 2014

_____
Shareholder's signature

Apartment Number  Apt # 44

By Inna Khiterer, by POA as Attorney-in fact
For Serguei Leontev

## PROXY

Know All Men by These Presents, that I/we, **INNA KHITERER,** the
undersigned 100 % stockholder of 250 shares of Stock and Appurtenant
Proprietary Lease of 440 West 164th Street Housing Development Fund
Corporation, do hereby constitute and appoint **MARK SCHWARTZ/FIA
164 ST HOLDINGS LLC** as my/our true and lawful attorney and agent in
my/our name, place and stead, to vote as my/our proxy for shareholders
special meeting dated November 10, 2014 to vote at the meeting and to act
as fully as I/we could do if personally present.

Witness my/our hand and seal this 8TH day of November 2014

_____
Shareholder's signature

Apartment Number  Apt # 32



Luz Torres <ltorres@carponterlaw.com>

---

## Fwd: 440 W 164

1 message

---

**Candace Carponter** <ccarponter@carponterlaw.com>                    Mon, Mar 2, 2015 at 9:01 AM
To: Luz Torres <ltorres@carponterlaw.com>

**PLEASE NOTE NEW ADDRESS!**

The Law Firm of Candace C. Carponter, P.C.
31 Smith Street, Second Floor
Brooklyn, NY 11201
(212) 367-9600
facsimile:  (212) 367-8972

--------- Forwarded message ---------
From: **Inna Kroll** <communityhomellc@yahoo.com>
Date: Thu, Nov 6, 2014 at 11:46 AM
Subject: Re: 440 W 164
To: Candace Carponter <ccarponter@carponterlaw.com>

Candace,
I personally don't need, I wanted to do guys a favor. I can sign for myself and for Sergey as his POA.
Sergey is not in NY now.
Please let me know the status w/7A.
Thx.

*Inna Kroll*
*Community Homes LLC*
*PO Box 320160 Brooklyn, NY 11232*
*718 889 0556 917 204-8301*
*917 591-5972 Fax*
*Communityhomellc@yahoo.com*

On Thursday, November 6, 2014 11:43 AM, Candace Carponter
<ccarponter@carponterlaw.com> wrote:

okay, if you need to sign a proxy, you can stop by my office.  Also, Sergy? will need to sign
one too .  We'll need originals.

**PLEASE NOTE NEW ADDRESS!**

The Law Firm of Candace C. Carponter, P.C.
31 Smith Street, Second Floor
Brooklyn, NY 11201
(212) 367-9600
facsimile: (212) 367-8972

On Thu, Nov 6, 2014 at 11:36 AM, Inna Kroll <communityhomellc@yahoo.com> wrote:
No, what for. I can give guys the proxy.

*Inna Kroll*
*Community Homes LLC*
*PO Box 320160 Brooklyn, NY 11232*
*718 889 0556 917 204-8301*
*917 591-5972 Fax*
*Communityhomellc@yahoo.com*

On Thursday, November 6, 2014 11:25 AM, Candace Carponter
<ccarponter@carponterlaw.com> wrote:

Thanks, Inna. . not in the office today. Will you be attending the meeting on Monday?

**PLEASE NOTE NEW ADDRESS!**

The Law Firm of Candace C. Carponter, P.C.
31 Smith Street, Second Floor
Brooklyn, NY 11201
(212) 367-9600
facsimile: (212) 367-8972

On Thu, Nov 6, 2014 at 11:23 AM, Inna Kroll <communityhomellc@yahoo.com> wrote:
Hi, Candance,
Let me know if you need any assistance re: 7A and the status w/7A. I am going to be around ur area in Brooklyn today later on in the day and if you want, I can stop by and hopefully answer some Qs you might have.
Inna

*Inna Kroll*
*Community Homes LLC*
*PO Box 320160 Brooklyn, NY 11232*

*718 889 0556 917 204-8301*

*917 591-5972 Fax*

*Communityhomellc@yahoo.com*

**From:** Inna Kroll [mailto:communityhomellc@yahoo.com]
**Sent:** Wednesday, August 13, 2014 8:09 AM
**To:** Mark J. Schwartz
**Cc:** David S. Goldwasser; Martin Joksimovik
**Subject:** apartments on 164 st

Hi, everyone,
This e-mail is to introduce everyone regarding the rental apartments #1, #31, #42.
I have told Martin last week that those apartments are sold and that David and Mark
are new owners. All are cc so you know each other's addresses.

*Inna Kroll*
*Community Homes LLC*
*PO Box 320160 Brooklyn, NY 11232*
*718 889 0556 917 204-8301*
*917 591-5972 Fax*
*Communityhomellc@yahoo.com*

1

# EXHIBIT 5

# SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: _____ **O. PETER SHERWOOD** _____         PART _49_

_____
                              *Justice*

**LOTHAR KROLL, *et al.*,**

                    **Plaintiff,**

            -against-

**440 WEST 164TH STREET HDFC , *et al.*,**

                    **Defendants.**

_____

| | |
|---|---|
| INDEX NO. | _653885/2014_ |
| MOTION DATE | **March 9, 2015** |
| MOTION SEQ. NO. | _001_ |
| MOTION CAL. NO. | |

The following papers, numbered 1 to _____ were read on this motion _for a preliminary injunction._

|  | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | _____ |
| Answering Affidavits — Exhibits _____ | _____ |
| Replying Affidavits _____ | _____ |

**Cross-Motion:** ☐ Yes  ☑ No

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):

        Upon the foregoing papers, it is ordered that this motion for a preliminary injunction is decided in accordance with the accompanying decision and order.

Dated: _____ **April 15, 2015** _____

                                    O. PETER SHERWOOD, *J.S.C.*

**Check one:**        ☐ **FINAL DISPOSITION**   ☑ **NON-FINAL DISPOSITION**
**Check if appropriate:**        ☐ **DO NOT POST**        ☐ **REFERENCE**
                ☐ **SUBMIT ORDER/ JUDG.**                ☐ **SETTLE ORDER/ JUDG.**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION PART 49
------------------------------------------------------------------X
LOTHAR KROLL, INNA KHITERER,
SERGEI LEONTEV, ANDREAS KROLL,
individually and derivatively as shareholders of
440 WEST 164th STREET HDFC,

                **DECISION AND ORDER**

          **Plaintiffs,**

      -against- ·

               **Index No.: 653885/2014**
               **Mot. Seq. No. 001**

440 WEST 164th STREET HDFC; FIA 164th ST
HOLDINGS LLC a/k/a FIA 164th HOLDINGS LLC;
SAC 492071714, LLC; MARK SCHWARTZ;
DAVID GOLDWASSER; RIVERSIDE
ABSTRACT, LLC; CITY OF NEW YORK,

          **Defendants.**
------------------------------------------------------------------X

O. PETER SHERWOOD, J.:

    In this motion sequence number 001, plaintiffs move by order to show cause for a panoply of injunctive relief. Defendant Riverside Abstract, LLC ("Riverside") cross-moves to dismiss the complaint as against it. On March 9, 2015, the court denied the motion for a preliminary injunction and advised the parties that a written decision would be issued. This Decision and Order is that decision.

*Background*

    This action arises from a transaction for the sale of shares in a cooperative building corporation (defendant or the "HDFC") appurtenant to certain apartments in a building located at 440 West 164th Street in New York City (the "Building"). The HDFC has operated and maintained the Building since it assumed ownership in 1982. However, because of financial difficulties arising from the alleged failure of certain residents to pay rent and the need to make repairs to the Building, the HDFC was unable to pay its real estate taxes. As a result, the City of New York filed a tax lien on the Building and commenced a foreclosure action. In an attempt to raise funds to make needed repairs, plaintiff Inna Khiterer secured a loan for $150,000 (the "Shanghai Note") from Shanghai Holdings LLC ("Shanghai") secured by a mortgage on the Building (the "Shanghai Mortgage"). Nonetheless, due to the physical deterioration of the Building, Ms. Gloria Hopson was appointed as

administrator for the Building pursuant to article 7A of the New York State Real Property Actions and Proceedings law.

Plaintiffs had owned shares in the HDFC and resided in apartments in the Building. Specifically, plaintiffs Lothar Kroll, Andreas Kroll, Inna Khiterer and Sergei Leontev and non-party Mitchell St. Clair owned the shares to apartments 1, 31, 32, 44 and 42 respectively. After appointment of the administrator, these individuals decided to sell their shares in the HDFC. To that end, plaintiffs and St. Clair entered into negotiations with defendants Schwartz and Goldwasser. Schwartz agreed to purchase the shares in the HDFC appurtenant to the five apartments and formed defendant FIA 164 Holdings LLC ("FIA") for that purpose. Goldwasser agreed to purchase the Shanghai Note and Mortgage. He formed defendant SAC4902071714 LLC ("SAC") as the entity that would acquire the Shanghai Note and Mortgage.

Plaintiffs allege that the proposed transaction was to occur in two stages. First, FIA would purchase the shares relating to apartments 1, 31, and 42, and SAC would purchase the Shanghai Note and Mortgage. The shares, and Shanghai Note and Mortgage would be held in escrow by defendant Riverside Abstract LLC ("Riverside") pursuant to an escrow agreement pending completion of a second stage. In stage two, Schwartz, Goldwasser, FIA, and SAC would make funds available to the HDFC so that it could satisfy the tax debt, remove the tax lien, and make the repairs necessary to remove the Article 7A administrator. Thereafter FIA would purchase the shares relating to apartments 32 and 44, which were expected to have a higher market value (due to the removal of the tax lien and repairs to the Building). Plaintiffs allege that none of the shares relating to the apartments would be released to defendants until after the second stage was completed.

Plaintiffs allege that in accordance with this structure, FIA and SAC deposited $125,000 in escrow with Riverside. Pursuant to the terms of the escrow agreement, the deposit was to be released to plaintiffs at the earlier of the removal of the Article 7A administrator or December 1, 2014, but it was not. Moreover, defendants never completed stage two of the transaction. Plaintiffs also contend that they resigned their positions on the board of the HDFC in light of their agreement to sell their shares. Thereafter, the HDFC noticed and held a special board meeting to elect a new board. Defendants Schwartz and FIA allegedly fraudulently induced plaintiffs to provide proxies to vote their shares at the election. In fact Schwartz and FIA voted the shares and Schwartz was

2

elected to the board. Plaintiffs further allege that the election was tainted as family members of shareholders voted their relative's shares at the meeting, and shareholders who were more than two months in rental arrears voted despite a provision in the HDFC's bylaws disqualifying such shareholders from voting.

Based on the foregoing, plaintiffs commenced this action and simultaneously moved by order to show cause for interim injunctive relief as follows:

(1) enjoining FIA and Schwartz from holding themselves out as shareholders or owners of apartments #31, 42 and 1, collecting any rents for those units, or in any way encumbering, transferring, or entering into any agreements with respect to those shares;

(2) enjoining SAC, Goldwasser and Schwartz from assigning, encumbering or entering into any agreements with regard to the Property, declaring a default on the Shanghai Note, or exercising any rights pursuant to the Shanghai Mortgage;

(3) enjoining the HDFC , FIA, and Schwartz from representing or binding the HDFC to any agreements;

(4) enjoining FIA and Schwartz from encumbering, disposing or transferring the shares of apartments #31, 1 and 42;

(5) directing Riverside to release the $125,000 being held in escrow to plaintiff Inna Khiterer;

(6) enjoining the City of New York from conducting a foreclosure sale on or transferring title to the property;

(7) enjoining FIA, Schwartz, and the board members of the HDFC from noticing any shareholder meetings;

(8) directing SAC, Goldwasser and Schwartz to deposit with the court the amount of funds necessary to repair the property;

(9) permitting plaintiffs "derivatively to place a bond to satisfy the outstanding tax lien held by the City of New York for the property or undertaking for the tax lien to remove it from the property"

(10) directing SAC and Schwartz to specifically perform on the agreement, including making all outstanding payments on the agreement and being responsible for all future payments; and

(11) enjoining SAC, and Goldwasser from transferring, assigning, pledging or selling the Shanghai Mortgage.

By stipulation of discontinuance dated February 9, 2015, the City of New York was dismissed as a defendant. By cross motion noticed on February 20, 2015, Riverside moved to be dismissed from the action. All other defendants have appeared and submitted opposition to the motion. On March 31, 2015, the HDFC filed for bankruptcy in the Southern District of New York.

3

Accordingly, on April 6, 2015, the Court issued an order staying this action as to the HDFC, but severed and continued the action as to the remaining defendant's. For the following reasons, the application for injunctive relief was denied on the record of the March 9th hearing, and Riverside's cross-motion to dismiss is granted.

### Discussion

### A. Plaintiffs' Order to Show Cause

The issuance of a preliminary injunction is governed by CPLR 6301, which provides, in pertinent part:

> A preliminary injunction may be granted in any action where it appears that the defendant threatens or is about to do, or is doing or procuring or suffering to be done, an act in violation of the plaintiff's rights respecting the subject of the action, and tending to render the judgment ineffectual . . . .

"The party seeking a preliminary injunction must demonstrate a probability of success on the merits, danger of irreparable injury in the absence of an injunction and a balance of equities in its favor" (*Nobu Next Door, LLC v Fine Arts Hous., Inc.*, 4 NY3d 839, 840 [2005]). "The decision to grant or deny provisional relief, which requires the court to weigh a variety of factors, is a matter ordinarily committed to the sound discretion of the lower courts" (*id.*).

Given the breadth of the injunctive relief sought, plaintiffs seek through this order to show cause all of the ultimate relief they seek in this action. "It is settled that absent extraordinary circumstances, a preliminary injunction will not issue where to do so would grant the movant the ultimate relief to which he or she would be entitled in a final judgment" (*SHS Baisley, LLC v Res Land, Inc.*, 18 AD3d 727, 728 [2d Dept 2005]). Such extraordinary circumstances are not present here. Accordingly, plaintiffs' motion must fail. Moreover, because the plaintiffs have not satisfied the requirements for issuance of a preliminary injunction, the motion must be denied.

### 1. Probability of Success on the Merits

Plaintiffs assert causes of action for breach of contract, specific performance, fraud, declaratory judgment, fraudulent conveyances, rescission, and permanent injunctive relief. Plaintiffs make four arguments in support of the claim that they have demonstrated a probability of succeeding on the merits: (1) "[p]laintiffs have set forth sufficient proof that FIA and Schwartz breached their purchase agreement and engaged in fraud and collusion since they have not purchased the Stage Two

4

apartments at market value" (Mantia aff, NYSCEF Doc. No. 12, ¶ 54); (2) the "unambiguous terms
of the escrow agreement require release of the $125,000 to Khiterer since the maturity date of
December 1, 2014 has passed" (*id.* ¶ 55); (3) "the election of November 10, 2014 was not proper
since delinquent shareholders were allowed to vote and be elected to the board, contrary to the
bylaws" and non-shareholders were allowed to vote (*id.* ¶¶ 56-57); and (4) "the fact that the building
continues to deteriorate and is not closer on removing the 7A [administrator] and failing to defend
a tax lien foreclosure which could result in the sale of the building . . . pretty well establishes a
breach of fiduciary duty" (*id.* ¶ 58). None of these arguments are persuasive.

   Plaintiffs' first argument relates to the claims of breach of contract and fraud. "It is basic
law, however, that injunctive relief may not be ordered to secure recovery in what amounts to a
breach of contract action" (*Robjudi Corp. v Quality Controlled Products, Ltd.*, 111 A.D.2d 156, 157
[1985] [Titone, J. dissenting]; *see Halmar Distribs. v Approved Mfg. Corp.*, 49 AD2d 841, 841 [1st
Dept 1975]). "The reason, of course, is that plaintiff has an adequate remedy at law, a remedy which
is not made inadequate because the alleged insolvency of the corporate defendant may render a
subsequent judgment unenforceable" (*Robjudi Corp.*, 111 AD2d at 157). Indeed, "[i]t is the ability
to bring an action at law and recover judgment that determines the adequacy of the legal remedy, not
the ability to collect on the judgment" (*id.*). As to the fraud claim, it is duplicative of the breach of
contract claim and therefore must be dismissed (*see Manas v VMS Assoc., LLC*, 53 AD3d 451, 453
[1st Dept 2008] ["the only fraud alleged is that the defendant was not sincere when it promised to
perform under the contract"]). In any event, and as will be discussed below, monetary damages
represents a fully adequate manner of compensating plaintiffs should they succeed on these claims.
For the reasons plaintiffs' first argument fails.

   Plaintiffs' second argument fails because the express terms of the escrow agreement are
ambiguous. Exhibit "A" to the Escrow Agreement provides for release of the $125,000 deposit at
the earlier of two events, labeled as "A" and "B" (*see* NYSCEF Doc. No. 25, at Riverside 7).
Condition A is the removal of the Article 7A administrator, which indisputably has not happened
(*see id.*). Condition B requires release of the funds on December 1, 2014, but imposes a further
condition that Khiterer or her representative must "present proof of the above stated events to the
escrow agent" (*see id.*). It could be argued that this further condition is a sub-condition to condition
"B", and if so, obscures to what "proof" it is referring. In any event, monetary damages represents

5

a fully adequate manner of compensating plaintiffs should they succeed on their claims.

Plaintiffs' third argument fails because they have offered no evidence that any shareholder voting in the special election was not eligible to do so. Plaintiffs contend that shareholders who were in arrears on their rent, and non-shareholder relatives of shareholders were improperly allowed to vote. These allegations are not supported by evidence. Although plaintiffs' reply papers purport to attach rent records as exhibit "D", no document is attached to the reply affirmation as exhibit D.

Plaintiffs also contend that the continued deterioration of the building and failure of defendants to take action to remove the Article 7A administrator and defend the tax foreclosure action "pretty well establishes a breach of fiduciary duty" (Mantia aff, NYSCEF Doc. No. 12, ¶ 58). Apart from the fact that a claim for breach of fiduciary duty is not pleaded in the complaint, this argument simply asserts that defendants have not held up their end of the bargain with regard to the sale of the plaintiffs' shares in the HDFC. As such, the argument merely relates to the breach of contract claims, as to which injunctive relief may not be granted in this case.

Further, the complaint does not allege that plaintiffs made a demand on the cooperative board before bringing suit themselves, or that doing so would necessarily be futile. Thus, plaintiffs failed to demonstrate a likelihood of success on those claims that they purport to bring derivatively. In their reply affirmation plaintiffs argue for the first time that making a demand on the board would be futile (*see* Mantia reply aff, ¶ 8). Plaintiffs' position is that because shareholders who were in arrears in their rent were improperly allowed to vote in the special election following plaintiffs' resignation from the board, the special election was invalid because there was no quorum present. Thus, according to plaintiffs, "there is no present board of the co-operative" (*see* Mantia reply aff, ¶63). Despite the fact that plaintiffs improperly raised this argument for the first time in reply, it fails for the additional reason that plaintiffs have provided no evidence that those shareholders voting in the special election were not entitled to do so. Accordingly, plaintiffs have not demonstrated a likelihood of success on the merits as to any of the claims they purport to bring derivatively.

Finally, defendants contend that they have in fact paid plaintiffs all of the money owed them under the contracts for sale of all of the apartments, and that plaintiffs in fact have acknowledged receipt of those funds (*see* Carponter aff, NYSCEF Doc. No. 27, ¶¶14-15). Plaintiffs do not dispute this allegation.

6

### 2. Danger of Irreparable Harm

Plaintiffs have also failed to demonstrate a danger of irreparable harm. Plaintiffs have not shown any harm that could befall them that would not be compensable through an award of money damages. For example, plaintiffs contend that "plaintiffs will have transferred their interest in the Stage One apartments to [defendants] for reduced market value without having received the offsetting consideration at market value for the Stage Two apartments" (Mantia aff, ¶ 60). This is a harm that is compensable through an award of monetary damages. Similarly, plaintiffs contend that "Khiterer will suffer irreparable harm it she does not receive the funds to which she is unconditionally entitled pursuant to expressed provision of Escrow Agreement" (*id.* ¶ 61). Even accepting this contention as true, the alleged harm is entirely compensable through an award of money damages. Third, plaintiffs argue that if the Building is foreclosed upon and sold pursuant to the City of New York's tax lien, all of the shareholders in the cooperative will lose the equity in their apartments. Again, such harm is compensable in money damages. Lastly, plaintiffs allege that allowing "improperly elected directors to run the HDFC . . . .would be disastrous for the HDFC" (Mantia aff, ¶ 64). This statement is conclusory and unsubstantiated as discussed above. Indeed, despite a multiplicity of causes of action alleged, this action is at bottom merely one for breach of an agreement to purchase plaintiffs' shares in the HDFC. Any harm flowing from that breach is compensable in money damages.

### 3. Balance of the Equities

Because plaintiffs have failed to carry their burden on the first two prongs, the court need not consider whether the balance the equities weigh decisively in plaintiffs' favor. Nonetheless, even if the court were to conduct such an analysis, plaintiffs have failed to meet their burden. Plaintiffs argue that "the building should remain a cooperative" and that defendants should not be permitted to "receive a windfall" (Mantia aff, ¶¶ 66-73). Plaintiff Khiterer was president of the board at the time the tax lien was placed on the Building. As a result, it is disingenuous for plaintiffs to contend that the state of the Building's finances including the impending foreclosure action is due to the defendants' actions or inactions.

### B. Riverside's Cross-Motion to Dismiss

Riverside cross moves to dismiss on the grounds that (1) it has the contractual and statutory right to deposit the escrow funds into the court and be released from the action; (2) the escrow

agreement forestalls any of the claims asserted against Riverside; and (3) the breach of contract claim fails to state a claim. Finally, Riverside seeks to recover the fees and expenses it has incurred in defending this action. For the following reasons, the cross-motion is due to be granted.

Pursuant to ¶ 3(f) of the escrow agreement, Riverside has the right to deposit the escrow funds "with a court of competent jurisdiction, and abid[c] by the determination of such Court with respect thereto. In such event, such delivery shall constitute a complete discharge and release of" Riverside (Fleischmann aff, Ex. B, NYSCEF Doc. No. 25). Moreover, CPLR 2601(a) provides that "a party paying money into court pursuant to the direction of the court is discharged thereby from all further liability to the extent of the money so paid in." Accordingly, Riverside may deposit the funds into the Court and be released from this action. Once it has done so, plaintiffs will have no claim for damages against Riverside. Indeed, the escrow agreement specifically provides that Riverside shall not be liable for any error in judgment for any action taken or omitted except for acts or omissions that constitute willful misconduct or gross negligence (see id., ¶ 3[d]). Plaintiff has not alleged that Riverside has engaged in acts or omissions rising to that level. Accordingly, once Riverside deposits the money into the court, it shall be dismissed from this action.

Lastly, Riverside is entitled to recover fees and expenses incurred in defending this action. Pursuant to ¶3(i) of the escrow agreement, FIA and Khiterer agreed to jointly and severally "defend, indemnify and hold [Riverside] harmless against all costs, claims and expenses (including reasonable attorneys' fees) incurred in connection with the performance of Escrow Agents' duties hereunder" (id., ¶ 3[i]). Thus, Riverside is entitled to its fees and expenses from Khiterer and FIA jointly and severally.

Accordingly, it is hereby

**ORDERED** that plaintiffs motion for a preliminary injunction is DENIED; and it is further

**ORDERED** that the cross-motion of Riverside to dismiss the complaint as to it is GRANTED; and it is further

**ORDERED** that the portion of Riverside's claim that seeks the recovery of attorney's fees is severed and the issue of the amount of reasonable attorney's fees Riverside may recover against the plaintiffs and FIA is referred to a Special Referee to hear and report; and it is further

**ORDERED** that counsel for the plaintiff shall, within thirty (30) days from the date of this

8

order, serve a copy of this order with notice of entry, together with a completed Information Sheet[1],

upon the Special Referee Clerk in the General Clerk's Office (Room 119M), who is directed to place

this matter on the calendar of the Special Referee's Part for the earliest convenient date.

This constitutes the decision and order of the court.

DATED:    April 15, 2015                              E N T E R,

                                                    *O. P. Sherwood*

                                                    O. PETER SHERWOOD
                                                    J.S.C.  4/15/15

---

[1]Copies are available in Room 119M at 60 Centre Street and on the Court's website at
www.nycourts.gov/supctmanh under the "References" section of the "Courthouse Procedures"
link).