**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
*In re*                                                                                                Chapter 11

440 WEST 164th STREET HOUSING                                          Case No. 15-20003 (RDD)
DEVELOPMENT FUND CORPORATION,

                Debtor.
-----------------------------------------------------------------x
INNA KHITERER, individually and derivatively                    Adv. Pro. No. 15-08276 (RDD)
on behalf of 440 WEST 164th STREET HOUSING
DEVELOPMENT FUND CORPORATION,

                Plaintiff,
v.

440 WEST 164th STREET HOUSING
DEVELOPMENT FUND CORPORATION,
FIA 164 HOLDINGS LLC, MARK
SCHWARTZ and JOHN DOES "1" through "50",

                Defendants.
-----------------------------------------------------------------x

**OBJECTION OF INNA KHITERER, INDIVIDUALLY AND DERIVATIVELY
ON BEHALF OF 440 WEST 164th STREET HOUSING DEVELOPMENT FUND
CORPORATION TO MOTION OF 440 WEST 164th STREET HOUSING
DEVELOPMENT FUND CORPORATION FOR ENTRY OF AN
<u>ORDER DISMISSING ADVERSARY PROCEEDING</u>**

Inna Khiterer ("Plaintiff"), individually and derivatively on behalf of 440 West 164th Street Housing Development Fund Corporation ("HDFC"), by her undersigned attorneys, submits this objection (the "Objection") to the motion (the "Motion to Dismiss") of HDFC for entry of an order dismissing the above-captioned adversary proceeding. In support of this Objection, Plaintiff respectfully submits as follows:

# PRELIMINARY STATEMENT

1. This action, as well as the state court action that was previously removed to this Court (the "Removed Action"), were commenced by Plaintiff to address various wrongs perpetuated upon her and upon those she represents, which wrongs have deprived Plaintiff of valuable bargained-for consideration.

2. As set forth in detail in the Complaints in this action and the Removed Action, Plaintiff agreed to sell five apartments to Mark Schwartz ("Schwartz") and FIA 164th Street Holdings LLC ("FIA") referred to herein as Apartments 1, 31, 32, 42 and 44. The proposed transaction was structured as a two-step transaction. First, Schwartz/FIA would purchase those units referred to as Apartments 31, 1 and 42. The purchase price for these units was lower than the fair market value of comparable properties due to facts related to the appointment of an Article 7A administrator to oversee the property.

3. As part of the transaction, Schwartz/FIA agreed, among other things, to pay the maintenance of all five units. The agreement reached among the parties also required Schwartz/FIA to provide sufficient funds to HDFC to rehabilitate the building so that the 7A administrator could be removed, and to pay certain outstanding real estate taxes. The intent of these agreements was to raise the value of Apartments 32 and 44 to market, which would then be purchased by Schwartz/FIA at market value – the second part of the transaction.

4. In this regard, the vesting of Schwartz/FIA's rights to Apartments 31, 1 and 42 was contingent upon the purchase by Schwartz/FIA of Apartments 32 and 44 at market value.

5. In August 2014, informal closings were held on Apartments 31, 1 and 42, and the stock certificates for these units were placed in escrow pending Schwartz/FIA's closing on Apartments 32 and 44.

2

6. The applicable escrow agreement provided, among other things, that Plaintiff would receive an additional $125,000 in exchange for her assistance, as needed, in removing the 7A administrator. This consideration, however, was not contingent upon the removal of the administrator. Rather, Plaintiff would be entitled to such funds upon the earlier of the administrator's removal and December 1, 2014. December 1, 2014 has come and gone and, despite demand from Plaintiff for release of the $125,000 from escrow, such funds have never been released to her.

7. In addition, pursuant to the terms of the escrow agreement, all expenses associated with the escrow agreement, from execution to termination, are to be the liability of FIA.

8. To date, Schwartz/FIA have not closed on the purchase of Apartments 32 and 44 and, therefore, their rights and title to Apartments 31, 1 and 42 have not yet vested. Moreover, Plaintiff submits that no valid and enforceable contract between Plaintiff and Schwartz/FIA for the purchase of Apartments 32 and 44 exists.

9. Notwithstanding the fact that Schwartz/FIA have yet to acquire title to any of the units, these parties proceeded to hold themselves out as the owners of all five units and have used this false pretense to reconstitute the board of directors and appoint Schwartz as a board member.

10. The result of Schwartz/FIA's wrongful actions and breaches of contracts is that Plaintiff has been deprived of the benefit of the bargain relating to the five subject units. Plaintiff received less than fair market value for Apartments 31, 1 and 42, has not received fair market value for Apartments 32 and 44, and has been denied release of the $125,000 held in escrow that should have been released to her almost a year ago. Instead, Plaintiff has been

3

compelled to litigate these issues and, adding insult to injury, has been threatened with additional lawsuits against her relating to these transactions.

11. Schwartz/FIA, by its Motion to Dismiss, will have this Court believe that the proposed transactions have been effectuated as originally intended. Nothing could be further from the truth. Without question, material issues of fact relating to the proposed transactions remain in dispute, specifically issues relating to ownership of the subject units.

12. Plaintiff submits that Schwartz/FIA's Motion to Dismiss this adversary proceeding represents nothing more than a request for judicial approval of their efforts to deny Plaintiff the consideration due her. Schwartz/FIA simply had no right to exercise the rights of holders of shares in any of the five units and, as discussed herein, their votes at the special meeting held in November 2014 were otherwise invalid.

13. At best, additional material issues of fact exist regarding the validity of these votes that cannot be properly decided on a motion to dismiss. For the reasons that follow, the Motion to Dismiss should be denied and Plaintiff should be afforded the opportunity to present her case on the merits.

## ARGUMENT

**I.    Whether Plaintiff is a Legally Adequate Representative of HDFC is a Factual Issue That Should Not be Decided in the Context of a Motion to Dismiss**

### A.    The Applicable Legal Standard

14. HDFC seeks dismissal of the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure claiming that it fails to state a cause of action. More specifically, HDFC alleges that Plaintiff is not a legally adequate representative of HDFC and, as such, may not maintain this action derivatively on behalf of HDFC. Such relief should be denied.

15. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plaintiff submits that the claims contained in the Complaint are plausible on their face and HDFC's attempt to demonstrate otherwise by alleging that Plaintiff is not an adequate representative is unavailing.

16. As an initial matter, HDFC's reliance upon *Maxwell v. Stein*, 1993 WL 512907 (S.D.N.Y. Dec. 3, 1993) for the proposition that Plaintiff is categorically disqualified from representing the company is misplaced. In that case, on motion for summary judgment the court found that the plaintiff controlled the company at issue and that he perpetrated various fraudulent acts while doing so, namely selling illegal off-exchange futures contracts in violation of various securities laws. *Id.* at *6. Based upon the factual determinations made in the context of the motion for summary judgment, the court dismissed plaintiff's derivative claim on the grounds that plaintiff could not sue on behalf of the company he had used to perpetuate a fraud. *Id.* Contrary to HDFC's assertion, merely being "accused" of wrongful conduct is insufficient to deny a plaintiff derivative standing – there must be an actual finding of fraud or similar misconduct.

17. In sharp contrast, here there is no allegation, let alone a finding, of fraud or other actionable misconduct on the part of Plaintiff that demonstrates that Plaintiff is categorically disqualified from representing the company. The fact that an Article 7A administrator was appointed due to various open violations in no way disqualifies Plaintiff from representing the

5

company, and HDFC has not offered any support for this proposition. Indeed, violations existed way before Plaintiff was ever involved with the property and the City of New York commenced foreclosure proceedings almost a decade before Plaintiff purchased her unit. Plaintiff submits that adequate funds were simply not available to cure these violations in time to prevent appointment of an administrator. However, there has never been any fraud or other wrongdoing on Plaintiff's part.

18. HDFC's "conflict of interest" argument fares no better. Indeed, no such conflict of interest exists. Rather, HDFC attempts to create a rule whereby a plaintiff may never institute a derivative action if such plaintiff also maintains an individual action – no such rule exists. Moreover, in *Steinberg v. Steinberg*, 434 N.Y.S.2d 877, 879 (Sup. Ct. 1985), one of the cases cited by HDFC, the court noted that one's "motivation in bringing an action ordinarily does not bar one legally privileged to bring it." Contrary to the rule of law HDFC attempts to create, a plaintiff can only be prevented from bringing an action where such plaintiff lacks the legal capacity to act as a fiduciary. *Id.*

19. Here, other than the bald allegation that Plaintiff's alleged conflicts of interest disqualify her from representing the company as a derivative plaintiff, the Motion to Dismiss does not even bother to expand upon this statement and does not actually articulate what such conflict is or why such alleged conflict prevents Plaintiff from acting as a fiduciary. Rather, HDFC alleges that through the Removed Action Plaintiff seeks payment of the purchase price for her shares and in this action Plaintiff is challenging the Defendants' rights to acquire such shares, thereby giving rise to an alleged conflict of interest. Memorandum of Law in Support of Motion to Dismiss, p. 9. In both actions, Plaintiff is merely attempting to exercise her statutory and contractual rights. In the Removed Action, Plaintiff is seeking to realize upon the benefit of the

6

bargain reached in connection with the sale of assets and to enjoin HDFC and its board from acting in any manner on behalf of HDFC. Similarly, in this action, Plaintiff is seeking a declaratory judgment declaring that the election to the Debtor's board is a nullity. In this regard, HDFC's allegation of the existence of a conflict of interest is puzzling. No such conflict exists, let alone a conflict that rises to the level of depriving Plaintiff of the ability to bring this action. In sum, whether Plaintiff has the legal capacity to act as a fiduciary is an issue of fact that cannot be properly decided on a motion to dismiss.

20. HDFC also argues that Plaintiff is not a proper representative to bring this action as she "will lose [her] status as a shareholder during the pendency of [this] action." Memorandum of Law in Support of Motion to Dismiss, p. 9. This statement inappropriately assumes the outcome of pending litigation. As set forth in the Complaint in the Removed Action, Plaintiff alleges various breaches of contract and fraud in the inducement and, among other things, seeks entry of an order rescinding the property sales contracts and setting aside related fraudulent conveyances. Contrary to HDFC's allegations, it is far from a *fait accompli* that Plaintiff will lose her status as shareholder. Rather, Plaintiff submits that the outcome of the Removed Action will be a finding that she is the rightful owner of the subject units, such units having never been transferred to Schwartz/FIA.

21. Finally, HDFC alleges that the Complaint in this action should be dismissed on account of Plaintiff's alleged failure to adequately plead futility of board demand. In *Maxwell v. Stein*, 1993 WL 512907 (S.D.N.Y. Dec. 3, 1993), cited by HDFC in its Memorandum of Law in Support of Motion to Dismiss, the court acknowledged that direct accusations of wrongdoing on the part of the controlling directors was sufficient to excuse demand. *Id.* at *5. In this regard,

the Complaint in this action sets forth the wrongful acts of Mark Schwartz, a purported member of the board, that rendered board demand futile. These allegations include:

- "At the special meeting, FIA and Schwartz wrongly represented to have authority to vote the shares concerning Apartments 31, 1 and 42 at the election even though their rights in said shares had not yet vested" (Complaint, ¶ 45);

- "At the special meeting, FIA and Schwartz 32 and 44 under proxies that were never previously disclosed or copies thereof provided to the board of directors" (Complaint, ¶ 46); and

- " . . . FIA and Schwartz nominated Schwartz for election to the board and, thereafter, improperly voted the shares concerning all five (5) units in favor of Schwartz's own election to the board" (Complaint, ¶ 47).

22.     Under the facts as alleged in the Complaint, Plaintiff should be excused from making board demand because her pleading adequately alleges that to do so would have been futile. The futility of requesting that the board commence an action to set aside the improper election that constituted the current board in the first place should be readily apparent, especially given Plaintiff's allegations of wrongful conduct underlying this election.

23.     To the extent the Court determines that futility has not adequately been pled, Plaintiff requests leave (and will do so by formal motion) to amend the Complaint to plead futility with further specificity. *See* Fed. R. Civ. P., Rule 15(a) (providing that leave to amend a pleading "shall be freely given when justice so requires"); *Morrone v CSC Holdings Corp.*, 404 F.Supp.2d 450, 456 (E.D.N.Y. 2005) (permitting Plaintiff to amend his complaint in order to remedy pleading deficiencies) citing *Zahra v. Town of Southold,* 48 F.3d 674, 685 (2d Cir. 1995). HDFC's request to dismiss this case with prejudice is simply unwarranted, assuming it is even appropriate to dismiss the Complaint in the first instance.

## II.    Plaintiff's Claims Are not Barred by Estoppel

24.    HDFC's argument that Plaintiff is estopped from challenging corporate action for which she provided Defendants a proxy to vote also misses the mark.  Although Plaintiff concedes that she provided such proxy under the presumption that Schwartz would be acting in good faith and abide by the By-Laws of the residential cooperative, and was aware of the upcoming board meeting, the notion that Plaintiff failed to object to the actions taken at that meeting is belied by the record of this case.

25.    Here, in November 2014, Plaintiff provided to Mark Schwartz/FIA 164th Street Holdings, LLC a proxy to vote her shares "at a special meeting dated November 10, 2014 to vote at the meeting and to act as fully as I/we could do if personally present."  *See* Declaration of Efrem Schwab in Support of Motion to Dismiss, Exhibit 4.  The proxy was a limited one – it only provided authority to vote at the November special meeting and only to the extent that Plaintiff could so vote if personally present.  The proxies provided were further limited to voting on behalf of the interest holders of Apartment Nos. 32 and 44.  *See* Declaration of Efrem Schwab in Support of Motion to Dismiss, Exhibit 4.

26.    Contrary to the limitations contained in the proxies themselves, Schwartz/FIA purported to vote in a manner that vastly exceeded the authority granted pursuant to the proxies. As an initial matter, no proxy was ever provided in respect of Apartment Nos. 31, 1 and 42. HDFC does not dispute this fact.  Whether Schwartz/FIA was authorized to vote on behalf of Apartment Nos. 31, 1 and 42 is an issue the resolution of which is dependent on the outcome of the Removed Action.  As is readily apparent from the allegations contained in this Action and the Removed Action, it is Plaintiff's position that ownership of these units never vested in

9

Schwartz/FIA and, therefore, could not be voted by them. Nevertheless, Schwartz/FIA improperly and without authorization voted the shares of all five units. *See* Complaint, ¶ 47.

27. Even assuming that ownership interests in Apartment Nos. 31, 1 and 42 vested in Schwartz/FIA (which they did not and have not), Plaintiff alleges that FIA was in arrears on its maintenance payments (Complaint, ¶ 48) and, pursuant to the company's by-laws, could not vote such shares. (Complaint, ¶ 24).

28. The applicable by-laws also limited a party's right to vote by proxy by requiring that any such proxy be filed with the Secretary of the board of directors before the appointed time of each meeting. (Complaint, ¶ 20). As alleged in the Complaint, the proxies for Apartment Nos. 32 and 44 were never disclosed to the board prior to the November 2014 meeting (Complaint, ¶ 46) and, accordingly, any votes cast pursuant to such proxies were invalid.

29. Furthermore, as noted above, the proxies limited Schwartz/FIA's ability to vote to matters on which Plaintiff could so vote if personally present. In this regard, Schwartz/FIA could not appoint board members that were otherwise ineligible to be so elected any more than Plaintiff could. (Complaint, ¶ 50). Schwartz/FIA nevertheless proceeded to elect board members that were otherwise ineligible to serve as board members. (Complaint, ¶ 50).

30. On December 17, 2014, approximately one-month after the special meeting was held, Plaintiff commenced the Removed Action in state court raising various objections to the purported votes and seeking injunctive relief enjoining the newly-elected board members from holding themselves out as such. Accordingly, the notion that Plaintiff failed to timely object to the action taken at that meeting is unfounded.

10

31. As the holder of a voting proxy, Schwartz/FIA also owed Plaintiff a fiduciary duty to act in Plaintiff's interests and to refrain from self-dealing. Contrary to Schwartz/FIA's fiduciary duties to Plaintiff, Schwartz/FIA acted in a manner that undermined Plaintiff's rights and remedies. Surely, Plaintiff did assent to her proxy being used in this manner.

32. The cases cited by HDFC itself demonstrate that estoppel is not appropriate here. For example, *Donovan v, Rothman*, 756 N.Y.S.2d 514 (1st Dep't 2003) is totally inapposite. There, plaintiff, believing he was a shareholder, executed certain agreements and assented to the provisions thereof, including the making of certain payments. Thereafter, plaintiff sued defendant for actually making the payments plaintiff already agreed to. The court held that plaintiff was estopped from recovering from defendant as he had assented to the payment. Here, on the other hand, Plaintiff never assented to Schwartz/FIA voting in a manner that violated the terms of the by-laws and that further violated Schwartz/FIA's fiduciary duties to Plaintiff.

33. Similarly, in *Pinnacle Consultants Ltd. v. Leucadia National Corp.*, 689 N.Y.S.2d 497 (1st Dep't 1999), the court held that the plaintiff's failure to object to a proposed corporate transaction was implied consent to same. Again, Plaintiff never assented to Schwartz/FIA voting in a manner that violated the terms of the by-laws and that further violated Schwartz/FIA's fiduciary duties to Plaintiff. As soon as Plaintiff learned of what transpired at the special meeting, she promptly commenced the Removed Action objecting to the vote held at such meeting.

34. HDFC also cites to *Steinberg v. Steinberg*, 434 N.Y.S.2d 877 (Sup. Ct. 1980) for the proposition that a plaintiff is estopped from challenging expenditures if she participated in, and benefitted from them. Here, however, Plaintiff in no way benefitted from the challenged

11

vote held at the special meeting. Indeed, Plaintiff alleges she has been injured by such vote and is seeking damages and relating injunctive relief to remedy this harm.

35. For the foregoing reasons, Plaintiff is not estopped from prosecuting its timely challenges to the election held at the special meeting.

## CONCLUSION

Based upon the foregoing, Plaintiff respectfully requests entry of an order denying the relief requested in the Motion to Dismiss, and granting Plaintiff such other and further relief as the Court deems just and proper.

Dated: New York, New York
October 8, 2015

>WHITE & WOLNERMAN, PLLC
>
>By: /s/ David Wolnerman
>David Y. Wolnerman, Esq.
>950 Third Avenue, 11th Floor
>New York, New York 10022
>(212) 308-0667
>
>*Counsel to the Plaintiff*